UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
KEVIN FLOOD,

        Plaintiff,

   -v-

JUST ENERGY MARKETING CORP., et al.,

        Defendants.
------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 20, 2017

7:15-cv-2012 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

  Kevin Flood brings this wage-and-hour action against Just Energy Marketing Corp., Just Energy New York Corp., and Just Energy Group, Inc. (collectively, "Just Energy"). Plaintiff alleges, individually and on behalf of other door-to-door workers who solicited new accounts for Just Energy, that defendants failed to pay him wages and overtime in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). The Court previously certified a conditional FLSA collective action, and over 100 individuals have opted in.

  Just Energy has moved for summary judgment on the basis that plaintiff Flood was an "outside salesman" and therefore exempt from the requirements of the FLSA and NYLL.[1] Also pending before this Court is plaintiff's motion to certify a class pursuant to Federal Rule of Civil Procedure 23. Because there is no genuine dispute as to a material fact that Flood was an exempt outside salesperson,

---

[1] This motion was filed prior to the 29 U.S.C. § 216(b) certification and opt-in of the additional plaintiffs. As discussed at the end of this opinion, a grant of summary judgment as to Flood's claim does not resolve the action as to the additional plaintiffs.

1

defendants' motion for summary judgment is GRANTED, and plaintiff's class certification motion is DENIED as moot.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.

Just Energy Group, Inc. is a Canadian corporation. (Defs. 56.1 ¶ 2, ECF No. 59-3.) Just Energy Marketing Corp. and Just Energy New York Corp., Delaware corporations doing business in New York, market and sell natural gas and electricity to residential and commercial customers.[2] (Id. ¶¶ 3-5.) For convenience, the Court will refer to defendants as "Just Energy."

Just Energy hired Flood to go door to door to solicit customers for its energy services. (Id. ¶ 8.) Plaintiff signed an independent contractor agreement ("IC Agreement") with Just Energy in September 2011, (IC Agreement, ECF No. 59-5), and worked for defendants through November 2014, (Defs. 56.1 ¶¶ 16, 27). It is undisputed that Flood spent approximately 75 to 80 percent of his time going door to door and was paid entirely on commission. (Id. ¶¶ 17, 18, 29.) In addition, he was eligible to earn "reconciliation and residual payments" for customers who stayed with Just Energy for a certain length of time. (Id. ¶ 19.) Flood testified that he obtained more than 8,000 new contracts for Just Energy as a door-to-door salesman and that he earned approximately $10,000 for the four months he was with Just Energy in 2011, $70,000 in both 2012 and 2013, and $42,000 during the eleven months he was engaged with Just Energy in 2014. (Id. ¶¶ 28, 35; Pl. Resp.

---

[2] Plaintiff rejects defendants' use of the word "customer." Because the Court finds that Flood was an exempt "outside salesman," as described in more detail below, the Court finds the use of the word to be appropriate.

Defs. 56.1 ¶ 28.) Plaintiff was a top performer for Just Energy, and often qualified for incentives or awards, including trips to London, the Dominican Republic, Ireland, Scotland, and Hawaii. (Defs. 56.1 ¶¶ 34, 35.) Flood contends that this success was due in part to the fact that he "worked fifty out of fifty two weeks per year and worked a minimum of five days per week, and sometimes worked six or seven days per week," (Pl. 56.1 ¶ 21, ECF No. 59-3; *see also id.* ¶ 25), and no less than sixty hours per week, (*id.* ¶ 22).

The parties dispute the extent to which Just Energy exercised supervision over Flood. It is undisputed that plaintiff attended an orientation session when he first started working for Just Energy, during which he was provided an orientation manual, and that he also attended daily, morning meetings at the regional sales office. (Defs. 56.1 ¶¶ 21, 22, 30.) It is also undisputed that plaintiff was provided a script to use when knocking on doors, (*id.* ¶ 39), which he added to, (*id.* ¶ 40; Flood Dep. 161:11-22, ECF No. 59-4), and that, in order to avoid confusion with the utility company, he was required to wear an identification badge and a company shirt, (Pl. 56.1 ¶ 15; Independent Contractor Orientation Manual 31, ECF Nos. 66-9 to -22). According to Flood, Just Energy required its workers to take the company van to and from the field, designated the areas where they would work each day, and controlled their hours. (Pl. 56.1 ¶¶ 18, 19, 20, 26.) And although there is no evidence that Just Energy required of Flood anything beyond canvassing (such as networking with potential customers or researching client leads), Flood testified

that he "developed all customers, whether they were residential or commercial, on [his] own." (Flood Dep. 79:17-19.)

Completed customer contracts were forwarded from the regional sales office to a corporate office in Canada for processing, (Defs. 56.1 ¶ 53), and the parties agree there were several reasons why a sale might not go through. First, there could be issues with a third-party verification call. When residents agree to use Just Energy, they are required to complete a verification call, which is designed to prevent fraud and ensure they understand their purchase. (*Id.* ¶ 43.) A sale will not go through if the third-party caller cannot verify the resident's information. In plaintiff's experience, the two biggest reasons why a sale would not go through were when residents cancelled due to the length of the third-party verification call, or because the verifier spoke in broken English. (*Id.* ¶ 50.) Second, residents could change their mind or cancel. (*Id.* ¶ 49.) Third, some residents put a "slam block" on their utility accounts to prevent the use of energy service companies like Just Energy without their permission. (*Id.* ¶ 51.) And fourth, a utility company might disqualify someone for having a large balance. (*Id.* ¶ 52.)

The crux of Flood's argument against his designation as an "outside salesman" is that he had "no authority to approve a new customer for an energy contract with Just Energy. Just Energy or the utility had final discretion whether to accept the applicant as a new customer." (Pl. Resp. Defs. 56.1 ¶ 2.) In his deposition, however, Flood testified that he was unaware of any situation in which Just Energy arbitrarily rejected a sale. (Flood Dep. 238:5-11.) Plaintiff more

4

recently has attempted to modify this position by pointing to several "Predict-a-Bill" orders in Staten Island that he says Just Energy rejected after-the-fact. (Pl. 56.1 ¶ 31.) Flood also argues that Just Energy would claw back his commissions, for example, if a customer cancelled an account before the end of the term or the contract was changed to an "in house" account by Just Energy. (Pl. Resp. Defs. 56.1 ¶ 17.)

Flood filed this lawsuit on March 17, 2015, alleging that defendants failed to pay him and those similarly situated wages and overtime in violation of the FLSA (Count One) and the NYLL (Counts Two and Three).[3] (Compl.) On December 23, 2015, Just Energy moved for summary judgment in its favor on all of Flood's claims. (Mot. Summ. J., ECF No. 59.) On January 25, 2016, the Honorable Analisa Torres, who was then presiding over this action, granted plaintiff's motion for conditional collective action certification pursuant to the FLSA. (ECF No. 64.) On April 25, 2016, plaintiff filed a motion for class certification pursuant to Federal Rule of Civil Procedure 23 for the wage-and-hour claims under the NYLL. (ECF No. 144.) The case was transferred to the undersigned on November 22, 2016. Just Energy's motion for summary judgment and Flood's motion for class certification are now fully submitted.

---

[3] Count Two is a class action claim alleging violations of the minimum wage and overtime provisions of the NYLL, (Compl. ¶¶ 63-70, ECF No. 1), and Count Three alleges violations of Section 191 of the NYLL, which concerns frequency of payments for earned wages, and Section 198, which allows an employee to recover costs and other remedies for bringing a civil action to recover unpaid wages, (id. ¶¶ 71-75). See, e.g., Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 358 n.17 (E.D.N.Y. 2015).

II.  LEGAL PRINCIPLES

    1.  <u>Summary Judgment.</u>

Summary judgment may not be granted unless a movant shows, based on admissible evidence, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010).  The Court's function on summary judgment is to determine whether there exist any genuine issues of material fact to be tried, not to resolve any factual disputes.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

    2.  <u>Class Certification.</u>

A plaintiff seeking certification of a class must prove by a preponderance of the evidence that its proposed class meets the requirements of Federal Rule of Civil Procedure 23(a) and, if those requirements are met, that the class is maintainable under at least one of the subdivisions of Federal Rule of Civil Procedure 23(b).  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008).  Here, Flood asserts that he has met the requirements of Rule 23(b)(3).

Pursuant to Rule 23(a), a court must determine whether a proposed class satisfies four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4)

adequacy of representation. Rule 23(b)(3) allows certification if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See also Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). In determining whether class certification is appropriate, the district court must receive enough evidence—by affidavits, documents, or testimony—to be satisfied by a preponderance of the evidence that each Rule 23 requirement has been met. *See Teamsters Local 445*, 546 F.3d at 202.

III. ANALYSIS

    1. <u>FLSA & NYLL.</u>

a. *Legal Principles*

The FLSA imposes minimum-wage and maximum-hour requirements on employers. 29 U.S.C. §§ 206-207. Those requirements, however, do not apply to workers employed "in the capacity of outside salesm[e]n." *Id.* § 213(a)(1); *see also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2161 (2012). "Because the FLSA is a remedial law, [courts] must narrowly construe its exemptions." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010) (footnote omitted). Moreover, an employer bears the burden of establishing that an exemption applies. *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009).

An "outside salesman" is an employee "(1) [w]hose primary duty is: (i) making sales . . . ; or (ii) obtaining orders or contracts for services or for the use of facilities,"

7

and "(2) [w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a) (defining "outside salesman" as authorized by the FLSA exemption provision, 29 U.S.C. § 213(a)(1)); see also N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (noting that the NYLL's overtime provision is subject to the FLSA exemptions); *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 140, 145 (2d Cir. 2013) (same). A sale "includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). The U.S. Supreme Court has explained that "other disposition" must be interpreted to mean "those arrangements that are tantamount, in a particular industry, to a paradigmatic sale of a commodity."[4] *Christopher*, 132 S. Ct. at 2171-72.

Courts also consider whether the employee bears indicia of an outside salesperson. Just Energy points to the "hallmark activities" listed in a case from this district, including "(1) whether the employee generates commissions for himself through his work, (2) the level of supervision of the employee, (3) the amount of work done away from the employer's place of business, (4) whether the employee independently solicits new business, and (5) the extent to which the employee's work is unsuitable to an hourly wage." *Chenensky v. N.Y. Life Ins. Co.*, No. 07 Civ. 11504, 2009 WL 4975237, at *5 (S.D.N.Y. Dec. 22, 2009) (citing 29 C.F.R. § 541.700). For his part, Flood points to a case from the Northern District of Ohio involving Just Energy subsidiaries that examined factors such as "whether the

---

[4] Although *Christopher* dealt with the unique regulatory environment of the pharmaceutical industry, 132 S. Ct. at 2172 & n.23, it interpreted the FLSA provisions that apply to this case and, therefore, its reasoning assists in guiding the Court's analysis here.

employees: (1) receive commission compensation; (2) receive specialized sales training; (3) must solicit new business; (4) were hired for their sales experience; and (5) were directly supervised." *Hurt v. Commerce Energy, Inc.*, No. 12 Civ. 758, 2013 WL 4427257, at *5 (N.D. Ohio Aug. 15, 2013) (footnotes omitted).

In all events, it is clear that "[t]he question of how the [employees] spent their working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (alterations in original) (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).

b. *Discussion*

The parties do not dispute that Flood is "customarily and regularly engaged away from the employer's place or places of business," 29 C.F.R. § 541.500(a); *accord* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. (*See, e.g.*, Defs. Mem. Law 10, ECF No. 59-1; Pl. Resp. Opp'n 18, ECF No. 66.) They disagree, however, as to whether Flood's primary duty was "making sales" or "obtaining orders or contracts for services." The Court concludes that the undisputed material facts demonstrate that Flood's primary duty met these requirements.

In plaintiff's own words, he was a "salesperson." (Flood Dep. 272:11-16.) The title fits: he was paid exclusively on commission, (Defs. 56.1 ¶¶ 17, 18), spent 75 to 80 percent of his time going door to door, (*id.* ¶ 29), was "the last salesperson to touch the customer," (Flood Dep. 272:5-8), and could not think of any situation

9

where Just Energy arbitrarily rejected a sale, (*id.* at 238:5-14 (reasoning that "[t]hey want as much business as they can get")). Flood points to commissions that allegedly were withdrawn from the Staten Island Predict-a-Bill program to demonstrate Just Energy's final authority over sales approval, (Pl. 56.1 ¶ 31), but this does not alter his fundamental status. (In addition, there is no evidence in the record to support this contention other than plaintiff's speculation, (*see* Flood Dep. 174:9-176:6).) *See Barkley v. Penn Yan Cent. Sch. Dist.*, 442 F. App'x 581, 582 (2d Cir. 2011) (summary order). And although it is true that Flood may have been subject to some supervision, to conclude—based on that—that he was not a salesperson would be to discard the functional, rather than formal, inquiry the Court is tasked with performing. *See Christopher*, 132 S. Ct. at 2170 ("The statute's emphasis on the 'capacity' of the employee counsels in favor of a functional, rather than a formal, inquiry, one that views an employee's responsibilities in the context of the particular industry in which the employee works.").

Flood argues that his primary duty could not have been "making sales" or "obtaining orders or contracts for services" given that, pursuant to the IC Agreement, a contract for Just Energy's services was not "effective" until it was approved by defendants. (IC Agreement at 2; *see also* Customer Agreement 2, ECF Nos. 66-34 to -35 ("This Agreement takes effect when you sign it and is conditional upon our acceptance of it. Our acceptance of this Agreement is at our sole discretion.").) The Court disagrees. If he was not making the sale, who was? No

10

one? This makes no sense. Indeed, he was paid *commissions* based directly on sales he had made. The proof is in the pudding, so to speak.

There is nothing in the FLSA or the NYLL that limits the definition of an outside salesperson to someone who has the unfettered discretion to finalize a binding sale. In fact, the Department of Labor's ("DOL") preamble to the 2004 FLSA regulations, to which the Supreme Court has turned for guidance in interpreting the scope of the outside salesperson exemption, *see Christopher*, 132 S. Ct. at 2163, counsels against plaintiff's categorical interpretation. The preamble defines an outside salesperson as someone who "in some sense" makes sales. Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,162 (Apr. 23, 2004). It also states that employees "have a primary duty of making sales if they 'obtain a commitment to buy' from the customer and are credited with the sale." *Id.* (quoting 1949 Weiss Report at 83). Indeed, for the outside salesperson exemption to apply, Flood was required only to have "direct[ed] efforts toward the consummation of a sale." 29 C.F.R. § 541.503(c) (distinguishing exempt "promotional work" from non-exempt "promotional work"). These regulations "cast doubt on the *Hurt* court's conclusion that, because Just Energy retained the right to rescind applications for service, the plaintiffs there did not 'mak[e] sales' as that term is used in FLSA." *Dailey v. Just Energy Marketing Corp.*, No. 14 Civ. 2012, 2015 WL 4498430, at *4 n.1 (N.D. Cal. July 23, 2015).

11

Here, there is no dispute that Flood "direct[ed] efforts toward the consummation of a sale." 29 C.F.R. § 541.503(c). He also "obtain[ed] a commitment to buy" from those residents he convinced to use Just Energy's services and was credited with the sale—his commission was based on how many customers he recruited to Just Energy. It is clear that Flood was an outside salesperson: when he knocked on doors, he was responsible for culling potential customers from ineligible residents; he, and only he, attempted (often quite successfully) to sell them energy services; and the record indicates that, once the residents signed up for Just Energy's services, defendants did little other than make sure there were no technical or legal issues with processing the contracts. Accordingly, there is no genuine dispute that Flood's primary duty was "making sales."

To the extent the Court is required to analyze external indicia or "hallmark activities," they do not create a triable issue of fact.[5] *See Hurt*, 2013 WL 4427257, at *5; *Chenensky*, 2009 WL 4975237, at *5. It is undisputed that Flood received a commission, primarily worked away from Just Energy's regional sales offices, and received sales training. And while Just Energy did not require its door-to-door workers to have sales experience, (Pl. 56.1 ¶ 10), it is undisputed that Flood had previously worked as a salesperson, (Defs. 56.1 ¶¶ 7, 11). The parties, however, dispute the extent to which Flood was supervised by Just Energy, and the degree to

---

[5] The parties dispute what weight the Court should give these factors. The Supreme Court in *Christopher* looked to "external indicia" as further support for its conclusion that petitioners "made sales" for purposes of the FLSA. 132 S. Ct. at 2172-73. The Court notes that other courts in this Circuit generally have looked to such indicia "to assist in the adjudication of 'mixed duties' cases, where the employees engage in sales and also perform a significant amount of non-sales work . . . . In such cases, the question is not—as it is here—whether the employees make sales at all, but whether their work *primarily* consists of making those sales." *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 471-72 (S.D.N.Y. 2008).

12

which he was able to solicit his own customers. The Court does not view some supervision as being irreconcilable with the outside salesperson exemption. At the least, the Court agrees with the conclusion of another district court addressing a similar case involving Just Energy's door-to-door workers, that "the external indicia of outside sales activity traditionally applied in the FLSA context are neutral as applied to Plaintiff." *Dailey*, 2015 WL 4498430, at *5.

Even if Flood did not "make sales," the Court concludes that Flood "obtain[ed] orders or contracts for services." 29 C.F.R. § 541.500(a)(ii). According to the relevant federal regulation, "[t]he word 'services' extends the outside sales exemption to employees who sell or take orders for a service, which may be performed for the customer by someone other than the person taking the order." *Id.* § 541.501(d). Flood argues that gas and electricity are commodities, not services, and therefore, his door-to-door activity on behalf of Just Energy does not fit within this exemption. (Pl. Resp. Opp'n 23.) The Court recognizes that the Consumer Agreement that Just Energy purchasers signed refers to Just Energy as both a commodity supplier and services provider.[6] (Customer Agreement 1 ("I choose [Just Energy] to supply natural gas and/or electricity *commodity* . . . [and] I agree to initiate commodity *service*." (emphases added).) The law in New York, however, where plaintiff worked for Just Energy, (Defs. 56.1 ¶ 20; Pl. 56.1 ¶ 11), is clear that the sale of electricity is a service, not a good. *See, e.g., Norcon Power Partners, L.P.*

---

[6] Although the sample Customer Agreement provided by plaintiff apparently is an outdated version used by a Just Energy predecessor, defendants agree that it "is fairly representative of the various customer agreements Just Energy has utilized during the relevant time period." (Defs. Reply 10 n.5, ECF No. 72.)

v. *Niagara Mohawk Power Corp.*, 163 F.3d 153, 155 (2d Cir. 1998) ("[T]he UCC does not apply to sale of electricity which is a service under New York law."); *United States v. Consol. Edison Co. of N.Y., Inc.*, 590 F. Supp. 266, 269 (S.D.N.Y. 1984) ("In New York, electricity is not considered 'goods' and the U.C.C. therefore is not directly applicable to contracts involving the provision of electricity.") (citing *Farina v. Niagara Mohawk Power Corp.*, 438 N.Y.S.2d 645, 647 (App. Div. 1981)). The Energy Services Company Consumers Bill of Rights, a consumer-protection law targeting abuses in the energy services market, further supports this interpretation. *See* N.Y. Gen. Bus. Law § 349-d. That law defines "energy *services*" to mean "electricity and/or natural gas"; an "energy services company" to mean "an entity eligible to sell energy *services* to end-use customers using the transmission or distribution system of a utility"; a "customer" to mean "any person who is sold or offered an energy *services* contract"; and "door-to-door sales" to mean "the sale of energy *services* in which the [company or company's representative] personally solicits the sale." *Id.* § 349-d(1) (emphases added). Accordingly, plaintiff's argument to the contrary does not withstand scrutiny.

The Court finds unconvincing Flood's additional arguments that he raises in an attempt to demonstrate triable issues of fact. First, plaintiff contends that defendants are barred from relitigating the outside salesperson exemption under the doctrine of offensive issue preclusion, or offensive collateral estoppel, because the jury in *Hurt* determined that Just Energy violated the FLSA. (Pl. Resp. Opp'n 14.) In order for a plaintiff to bar a defendant from litigating an issue on collateral

14

estoppel grounds, "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)). These factors, however, "are required but not sufficient. In addition, a court must satisfy itself that application of the doctrine is fair." *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).

Here, Flood seeks to employ collateral estoppel offensively. As an initial matter, the issues faced by the *Hurt* court are not identical to those present here: (1) although the principles behind the outside salesperson exemption were litigated in *Hurt*, the facts concerning Flood himself were not before that court; (2) the jury instructions in *Hurt* deviated from Second Circuit law relating to "making sales," as described above, (*see Hurt* Jury Instrs., ECF No. 66-47); and (3) the *Hurt* jury did not consider whether the plaintiffs in that case "obtained orders or contracts for services," (*see id.*). In addition, there has been no final judgment in the *Hurt* case. The last entry on that docket is a denial by the Court of Appeals for the Sixth Circuit of the *Hurt* defendants' petition to appeal an interlocutory order of the district court. (Order, *Hurt v. Commerce Energy, Inc.*, No. 12 Civ. 758 (N.D. Ohio Nov. 9, 2015), ECF No. 854.) "[A]lthough failure to appeal does not prevent

15

preclusion, inability to obtain appellate review, or the lack of such review once an appeal is taken, does prevent preclusion." *Gelb*, 798 F.2d at 44 (citations omitted). Finally, "[a]llowing offensive collateral estoppel may . . . be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Bear, Stearns & Co.*, 409 F.3d at 91 (quoting *Parklane Hosiery*, 439 U.S. at 330). The district court in the Northern District of California came to a different conclusion than in *Hurt*, see *Dailey*, 2015 WL 4498430, at *3, finding on summary judgment that a Just Energy door-to-door worker was an exempt outside salesperson under California law, which has been interpreted to be consistent with the FLSA in all material respects, see *Campanelli v. Hershey Co.*, 765 F. Supp. 2d 1185, 1189 n.10 (N.D. Cal. 2011) ("The parties do not dispute that under California law the outside sales and administrative exemptions are similar to those under the FLSA."). To the extent offensive collateral estoppel even could apply, therefore, the Court will not allow Flood "to cherrypick one decision that was unfavorable to the defendant[s] and ignore other decision(s) favoring the defendant[s] on the same issue." *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 265 (S.D.N.Y. 2013). In all events, the parties spend a great deal of time arguing over whether the courts in *Hurt* and *Wilkins v. Just Energy Group, Inc.*, 308 F.R.D. 170 (N.D. Ill. 2015),[7] which found

---

[7] Wilkins brought that lawsuit pursuant to the Illinois Minimum Wage Law ("IMWL"). Although "courts have generally interpreted [the FLSA and IMWL] to be coextensive," *Wilkins*, 308 F.R.D. at 178, the *Dailey* court also pointed out that the *Wilkins* Court "appears to have added a requirement that the orders or contracts be 'consummated' in order to satisfy the outside salesperson exemption," *Dailey*, 2015 WL 4498430, at *4. As the Court already has explained, there is no "consummation" requirement under the FLSA or NYLL.

16

that the "outside salesman" exemption did not apply to Just Energy door-to-door workers, or the *Dailey* court, which found that a Just Energy salesperson was exempt, arrived at the proper conclusion. To the extent the cases conflict, the Court agrees with the *Dailey* court's reasoning.

Finally, Flood points to DOL Opinion Letters in support of his position. (*See* Compl. Ex. B, ECF No. 1; Pl. Resp. Opp'n Ex. E, ECF No. 66-5.) These are inapposite. As Flood recognizes, the DOL letters "concluded . . . that door-to-door workers like Plaintiff were employees, and not independent contractors." (Pl. Resp. Opp'n 2.) That is an entirely different issue from whether an employee is or is not an "outside salesman." Accordingly, the DOL Opinion Letters have no bearing on the Court's conclusion that Flood is exempt from the FLSA's and NYLL's reach.

    2.  <u>Class Certification.</u>

Because Flood's claims do not survive Just Energy's motion for summary judgment, the Court denies his motion for class certification as moot.

    3.  <u>Remaining Plaintiffs.</u>

Defendants' motion for summary judgment, which was filed before Judge Torres certified the conditional FLSA collective action, is directed at Flood only. However, over 100 opt-in plaintiffs remain in the case. Each plaintiff may or may not have job responsibilities materially similar to Flood's. If similar, the Court's determination above will be applicable. But if different, additional analysis will be required. Accordingly, the Court directs any opt-in plaintiff who believes he or she is situated differently than Flood to file a Rule 56.1 statement setting forth such distinguishing facts not later than **Friday, February 3, 2017**. The Court will

assume that if no separate Rule 56.1 statement is filed, the facts are materially similar and will enter judgment accordingly. Defendants must respond to any submissions not later than **Friday, February 17, 2017**.

IV. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is GRANTED, and plaintiff's motion for class certification is DENIED as moot.

The Clerk of Court is directed to close the motion at ECF No. 144.

SO ORDERED.

Dated:     New York, New York
              January 20, 2017

                                            _____
                                                KATHERINE B. FORREST
                                                United States District Judge